IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARGIE BRANDON, individually, | § | CV. NO. 5:12-CV-1118-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| THE SAGE CORPORATION, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT; (2) GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO STRIKE AS MOOT

Before the Court is a Motion for Summary Judgment filed by

Defendant The Sage Corporation ("Sage" or "Defendant").  ("Mot.," Dkt. # 21.)

The Court held a hearing on Defendant's Motion on November 6, 2014.  At the

hearing, Glenn D. Levy, Esq., represented Plaintiff Margie Brandon ("Brandon" or

"Plaintiff"); John T. Hawkins, Esq., represented Defendant.  Upon careful

consideration of the arguments asserted in the supporting and opposing

memoranda, as well as the arguments presented at the hearing, the Court

**GRANTS** Defendant's Motion.  In conjunction with this ruling, the Court also

**GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Strike

1

(Dkt. # 27).

BACKGROUND

Defendant owns and operates truck driving schools, including a school in San Antonio.  (Mot., Ex. 1 ¶ 2.)  In May 2010, Brandon, who is Hispanic,[1] began working as a School Director at Defendant's San Antonio location.  ("Resp.," Dkt. # 26, "Brandon Decl.," Ex. 3 ¶ 1; "Compl.," Dkt. #1 ¶ 8.)  In March 2011, Carmela Campanian ("Campanian"), a National Project Director for Sage, arrived at the San Antonio campus to conduct specialized training.  (Brandon Decl. ¶ 2; Mot., Ex. 3 ¶ 2.)

On Campanian's first day at the San Antonio school, Brandon alleges that Campanian saw a Sage instructor, Loretta Eure ("Eure"), with a student and asked Brandon, "What is that and who hired that?"  (Id. ¶ 3.)  Brandon alleges that Campanian then said, "Please don't tell me that is a Sage instructor" and informed Brandon that Sage did not hire "cross genders."  (Id.)  After Brandon told

---

[1] The Court notes that Plaintiff has presented no competent summary judgment evidence on this matter.  The only statement potentially related to Plaintiff's race in her summary judgment evidence is the incomplete statement in her declaration that "as both Maria Solis are Hispanic [sic], we found this comment very insulting."  (Resp., Ex. 3 at 2.)  However, since Defendant has not addressed this issue or moved for summary judgment on the basis that Plaintiff cannot establish the first element of any Title VII claim—that Plaintiff is a member of a protected class—the Court will assume the allegation contained in the Complaint is true.

2

Campanian that she hired Eure because Eure was qualified and filled the school's

need for a bilingual instructor, Brandon alleges that Campanian told her, "We will

deal with you seriously for hiring that."  (Id.)  Brandon further alleges that

Campanian indicated she would discuss the matter with Sage's President, Gregg

Aversa ("Aversa") and go over appropriate punishment for Brandon.  (Id.)

Brandon alleges that the next day, Campanian asked Brandon "why

[she] had not approached the Migrant Workers Training Program" because the

program paid 100% of tuition and 85% of her student body came from that

program.  (Id. ¶ 4.)  When Brandon replied that San Antonio's population did not

consist of migrant workers, Campanian allegedly replied, "Hello! There are

Mexicans here and that's what Mexicans do.  They work as migrant workers.  You

give them room and board, pay them $500 per month and they are happy."  (Id.)

Brandon alleges that while her administrative assistant, Maria Solis ("Solis"), was

explaining San Antonio's demography to Campanian, Campanian interrupted,

stating "Well I am seeing things here . . . . there is no education."  (Id.)

Shortly thereafter, Brandon alleges that Campanian called a meeting

with Brandon and Solis, during which she informed Brandon that her pay would be

cut in half as punishment for hiring Eure.  (Id. ¶ 5.)  Later that afternoon, when

Brandon called Campanian's attention to her failure to place Eure on the schedule,

3

Campanian allegedly asked Brandon if she "understood the severity of the impending consequences for hir[ing] a cross gender." (Id.)  At the end of the day, Brandon resigned from her position.  (Id. ¶ 7.)

On November 29, 2012, Brandon filed a complaint in this Court, naming Sage as the sole defendant.  She asserts claims of racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981; wrongful termination and retaliation under Title VII and § 1981; and negligent hiring, supervision, training, and retention.  (Compl. ¶¶ 14–23.)  Brandon seeks past and future wages and benefits, noneconomic damages, punitive damages, and attorney's fees.  (Id. at 6–7.)

On July 31, 2014, Defendant filed the instant Motion for Summary Judgment.  (Dkt. # 21.)  Plaintiff filed her Response to the Motion for Summary Judgment on September 22, 2014.  (Dkt. # 26.)  On September 29, 2014, Defendant filed a Motion to Strike various portions of Eure's declaration, which was submitted in support of Plaintiff's Response.  (Dkt. # 27.)  On the same day, Defendant submitted its Reply to Plaintiff's Response to the Motion for Summary Judgment.  (Dkt. # 28.)

<u>LEGAL STANDARD</u>

A movant is entitled to summary judgment upon showing that "there

4

is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see also

Meadaa v. K.A.P. Enters., L.L.C., 756 F.3d 875, 880 (5th Cir. 2014).  A dispute is

only genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).

       The moving party bears the initial burden of demonstrating the

absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986).  If the moving party meets this burden, the nonmoving party must

come forward with specific facts that establish the existence of a genuine issue for

trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703,

706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621

(5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

       In deciding whether a fact issue has been created, "the court must

draw all reasonable inferences in favor of the nonmoving party, and it may not

make credibility determinations or weigh the evidence." Kevin M. Ehringer

Enters. v. McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011) (quoting Reeves

v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However,

"[u]nsubstantiated assertions, improbable inferences, and unsupported speculation

are not sufficient to defeat a motion for summary judgment."  United States v.

Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of

Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

DISCUSSION

I.   Defendant's Motion to Strike

Defendant objects to various portions of Eure's declaration, submitted

in support of Plaintiff's Response, on the basis that particular statements

(a) constitute inadmissible hearsay and (b) contain speculation and conclusory

statements.  (Dkt. # 27 at 2–4.)  Defendant also argues that the entire affidavit

should be stricken as a sham affidavit because it conflicts with Eure's deposition

testimony.  (Id. at 4–5.)

A.   Sham Affidavit

"It is well settled that this court does not allow a party to defeat a

motion for summary judgment using an affidavit that impeaches, without

explanation, sworn testimony."  S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489,

495 (5th Cir. 1996) (citing Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 137

n.23 (5th Cir. 1992)). This circuit recognizes the "sham-affidavit rule," which

6

prohibits a non-moving party from "manufactur[ing] a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation." Guerrero v. Total Renal Care, Inc., 932 F. Supp. 2d 769, 776 (W.D. Tex. 2013). The "sham-affidavit rule 'is applied sparingly' and may be invoked only where there is 'some inherent inconsistency between an affidavit and a deposition.'" Axxiom Mfg., Inc. v. McCoy Invs., Inc., 846 F. Supp. 2d 732, 749–50 (S.D. Tex. 2012).

Defendant argues that Eure's declaration attests to the fact that Defendant discriminated against her or had a position against transgender employees, but that Eure testified that the only incidents supporting Defendant's bias was the incident in which Campanian would not allow Eure to use a truck and Campanian's comments that Eure was insubordinate. (Dkt. # 27 at 4–5.) Defendant argues that the deposition testimony directly conflicts with the declaration and, accordingly, the Court should strike Eure's declaration in its entirety. (Id. at 5.)

The fact that Defendant does not agree with Eure that these incidents amount to a showing of gender discrimination or a policy against transgender employees does not render the statements inconsistent. The court finds no direct conflict between the affidavit and deposition testimony indicating bad faith, and

7

therefore **DENIES** Defendant's Motion to Strike Eure's declaration in its entirety

on the basis that the declaration constitutes a sham affidavit.

     B.     <u>Hearsay and Conclusory Statements</u>

     Under Federal Rule of Evidence 56(c)(4), a "declaration used to

support or oppose a motion must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that that the . . . declarant is competent

to testify on the matters stated."[2] Any statements in a declaration that violate this

rule are not considered for summary judgment purposes; any portions of the

declarations that are not struck remain part of the summary judgment record.  <u>See</u>

<u>Mayfield v. Tex. Dep't of Criminal Justice</u>, 529 F.3d 599, 607 (5th Cir. 2008)

(citing <u>Akin v. Q–L Invs., Inc.</u>, 959 F.2d 521, 531 (5th Cir. 1992)); <u>Williamson v.</u>

<u>U.S. Dep't of Agric.</u>, 815 F.2d 368, 383 (5th Cir. 1987).

     1.     <u>Conclusory Statements</u>

     Defendant argues that the following statements in Eure's declaration

are conclusory or speculative: (1) "I believe it was Mr. Noel's way of letting me

---

[2] Although Eure's declaration is unsworn, it is nevertheless entitled to consideration because it falls within the statutory exception permitting consideration of unsworn oaths.  28 U.S.C. § 1746; <u>Nissho-Iwai Am. Corp. v. Kline</u>, 845 F.2d 1300, 1305–06 (5th Cir. 1988)) (finding that, to be competent for summary judgment purposes, an affidavit must be sworn or its contents must be stated to be true and correct under penalty of perjury).

know that my gender was an issue with him"; (2) "I learned my gender was an issue with management"; (3) "I later came to learn that Ms. Campanian was angry that Margie Brandon, the school director, had hired me because I was a gender non-conforming female instructor"; (4) "an environment where an owner and an executive had bigotry and hate as a motivator."  (Dkt. # 27 at 3–4.)

The Court agrees that the statements are of a conclusory nature, since they are Eure's speculative conclusions about the beliefs of others.  Accordingly, the statements are inadmissible, and the Court **GRANTS** Defendant's Motion to Strike on that basis.

### 2.   Hearsay

Defendant argues that the following statements in Eure's declaration are hearsay: (1) Eure's recounting of the interaction between Campanian and Brandon, during which Campanian allegedly asked Brandon, upon seeing Eure, "What is that," and told Brandon that she would be punished for hiring "cross genders" and (2) Eure's statement that Brandon was instructed by Campanian to significantly reduce Eure's work schedule.  (Dkt. # 27 at 2.)

The Court agrees that, because Eure was not present for either of these conversations, they constitute inadmissible hearsay.  Accordingly, the Court **GRANTS** Defendant's Motion to Strike on that basis.

9

## II.   Defendant's Motion for Summary Judgment

In its motion, Defendant contends that Brandon's claims fail because: (1) she failed to establish a prima facie case on her claims of racial discrimination, retaliation, and hostile work environment; (2) her constructive discharge claim is insufficient as a matter of law; and (3) her negligent hiring, supervision, training, and retention claim is both preempted and insufficient as a matter of law.[3]  (Mot. at

---

[3] The Court agrees with Defendant that, although Brandon's complaint contains the cursory statement that "Defendant's employment practices had a disparate and adverse impact on Plaintiff because of her race and/or national origin" (Compl. ¶ 18), Brandon has not alleged a disparate impact claim.  As the Supreme Court has described:

> [D]isparate treatment is the most easily understood type of discrimination.  The employer simply treats some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic]. . . . By contrast, disparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.

Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003) (internal quotation marks omitted) (citations omitted).

The facts alleged in Brandon's complaint do not identify any facially neutral employment practices that disparately impact Hispanic employees.  See McClain v. Lufkin Indus., Inc., 519 F.3d 264, 275 (5th Cir. 2008) ("To establish a prima facie case of discrimination under a disparate-impact theory, a plaintiff must show: (1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two"); see also Ricci v. DeStefano, 557 U.S. 557, 587 (2009) ("a prima facie case of disparate-impact liability [is] essentially, a threshold showing

3–19.)  The Court considers each argument in turn.

A.     <u>Racial Discrimination</u>

Defendant contends that summary judgment on Brandon's racial discrimination claim is warranted because Brandon failed to make out her prima facie case.  (<u>Id.</u> at 4–6.)  Specifically, Defendant argues that (1) Brandon cannot establish the third element of her prima facie case because there was no adverse employment action taken against her; (2) Brandon cannot establish the fourth element of her prima facie case because she was not treated less favorably than similarly situated, non-Hispanic employees; and (3) regardless, Defendant had a legitimate, non-discriminatory reason for counseling Brandon.  (<u>Id.</u>)  At the hearing, Plaintiff's counsel indicated that he believes this is a case of direct evidence of discrimination and therefore the Court need not reach the questions regarding the prima facie case under the circumstantial evidence test.

"To succeed on a claim of intentional discrimination under Title VII . . . or Section 1981, a plaintiff must first prove a prima facie case of discrimination. Generally, a plaintiff proves a prima facie case through a

---

of a significant statistical disparity, and nothing more" (citations omitted)).
Because Brandon's complaint does not set forth sufficient factual allegations to
plead a disparate impact claim, <u>see</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570
(2007), the Court interprets Brandon's "race and/or national origin discrimination"
claim as a traditional disparate treatment claim.

four-element test that allows an inference of discrimination[,] [b]ut a prima facie

case can also be proven by direct evidence of discriminatory motive." Wallace v.

Tex. Tech Univ., 80 F.3d 1042, 1047–48 (5th Cir. 1996) (internal citations

omitted).

      1.    Direct Evidence Test

"Direct evidence is evidence which, if believed, proves the fact

without inference or presumption." Jones v. Robinson Prop. Grp., 427 F.3d 987,

992 (5th Cir. 2005).  Once a plaintiff presents direct evidence that discrimination

motivated or was a substantial factor in the adverse employment action, the burden

shifts to the employer to show that the same decision would have been made

regardless of discrimination.  Id.

Remarks can constitute direct evidence of discrimination when they

state on their face that an improper criterion served as a basis for the adverse

employment action, id. at 993, or if they meet the four-part test set forth in Brown

v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996).  See also Laxton v. Gap Inc.,

333 F.3d 572, 583 n.4 (5th Cir. 2003) (noting that the CSC Logic test applies to

determine whether a remark constitutes direct evidence of discrimination).  Under

the CSC Logic test, a remark can be direct evidence of discrimination if it is

"1) [race] related; 2) proximate in time to the terminations; 3) made by an

individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." 333 F.3d at 655; see also Arismendez v. Nightingale Home Health Care, Inc., 493 F.3d 602, 607–08 (5th Cir. 2007) (applying the CSC Logic test in a case of pregnancy discrimination); Vance v. Union Planters Corp., 209 F.3d 438, 442 (5th Cir. 2000) (applying CSC Logic to sex discrimination).

With regard to racial discrimination, the only potential direct evidence of discrimination upon which Brandon can rely are the alleged comments made by Campanian about Mexicans. (Resp. at 1–2.)  However, the comments did not state on their face that an improper criterion was the basis of the adverse employment action, nor do they meet Brown's four-factor test.  The comments were general and unrelated to Brandon or her employment with the company and therefore were unrelated to the employment decision at issue.  Because the evidence does not demonstrate, without inference, that race was a reason for the alleged adverse employment action, it does not constitute direct evidence of discrimination.

### 2.   Circumstantial Evidence Test

Under the four-part test, circumstantial evidence test, a plaintiff must show "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was

treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."  Wesley v. Gen. Drivers, Warehousemen and Helpers Local 745, 660 F.3d 211, 213 (5th Cir. 2011) (quoting Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009)); see also Raggs v. Miss. Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002) (holding that the analysis of racial discrimination under Title VII and § 1981 are identical).  Once a plaintiff has made out the prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  Vaughn v. Woodforest Bank, 665 F.3d 632, 636 (5th Cir. 2011).  The burden then shifts back to the plaintiff to show either that (1) the reason is merely a pretext for discrimination or (2) although the reason is true, it is only one of the reasons, and another "motivating factor" for the action is the protected characteristic.  Id.

Since neither party contests that Brandon has met her burden on the first two elements of the prima facie case, the Court addresses the third and fourth elements in turn.

a.  Adverse Employment Action

For the purpose of Title VII and § 1981, an adverse employment action must consist of an ultimate employment decision, such as "hiring, firing,

14

demoting, promoting, granting leave, and compensating." <u>Thompson v. City of</u> <u>Waco</u>, 764 F.3d 500, 503 (5th Cir. 2014). "An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 281–82 (5th Cir. 2004)).

Although Brandon does not explicitly identify the adverse employment action upon which she relies, she identifies three major factual bases that could support such a claim in her Response: Campanian's derogatory comments about Mexicans, Campanian's threats against Brandon for hiring Eure, and Campanian's statement that she planned to cut Brandon's pay in half as punishment for hiring Eure. (Resp. at 1–2.) None of these events constitute adverse employment actions.

While Campanian's alleged comments about San Antonio's Mexican community were, if made, certainly offensive, they cannot constitute an adverse employment action. They had no bearing on Brandon's job duties, compensation, or benefits. Nor can Campanian's vague threats and ultimate threat of a pay cut meet Brandon's burden. Vague threats about employment do not constitute an ultimate employment decision. <u>See</u> <u>Hernandez v. Crawford Bldg. Material Co.</u>, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (citing <u>Mattern v. Eastman Kodak Co.</u>, 104

F.3d 702, 708 (5th Cir. 1997) (finding that oral threats to fire an employee did not amount to an ultimate employment decision), abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2013)).  Finally, although an actual reduction in pay is sufficient to constitute an adverse employment action, a mere threat to reduce pay is not an ultimate employment decision.  See id.; Fierros v. Tex. Dep't of Health, 274 F.3d 187, 194 (5th Cir. 2001) (holding that denial of pay raises can constitute ultimate employment decisions), overruled on other grounds, Smith v. Xerox Corp., 602 F.3d 320 (5th Cir. 2010).

Brandon also alleges that she resigned due to Campanian's treatment. A resignation can only constitute an adverse employment action where that resignation amounts to a constructive discharge.  Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001).  "To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign."  Id. (internal quotation marks omitted) (quoting Faruki v. Parsons, 123 F.3d 315, 319 (5th Cir. 1997)).  "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge."  Id.  In evaluating whether a reasonable employee would feel compelled to resign, a court must consider whether the plaintiff experienced any

demotions; reductions in salary or job responsibilities; job reassignments to menial

or degrading work, or to a younger supervisor; badgering, harassment, or

humiliation calculated to encourage resignation; offers of early retirement; or

continued employment on terms less favorable than the employee's former status.

Id. (quoting Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000)).

Even under a constructive discharge framework, Brandon's claim is

unsuccessful.  A reasonable worker would not have felt compelled to resign after

one day of inappropriate comments from a supervisor before reporting that

supervisor's conduct or finding out whether the threatened salary cuts would have

actually occurred.  See Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 481–82

(5th Cir. 2008) ("In the constructive discharge context, we have recognized that

'part of an employee's obligation to be reasonable is an obligation not to assume

the worst, and not to jump to conclusions too fast." (citing Dornhecker v. Malibu

Grand Prix Corp., 828 F.2d 307, 310 (5th Cir. 1987)).  Even if Brandon believed

that Campanian had the authority to cut her wages based on the way the threat

unfolded, a reasonable worker would have waited to find out if those pay cuts

actually come to pass prior to resigning from the position.

Moreover, none of the factors enumerated by the Fifth Circuit for

consideration in a constructive discharge analysis are present in this case.  Prior to

17

Brandon's resignation, she experienced no demotion, job reassignment, reduction

in her job responsibilities, or badgering or harassment calculated to encourage her

resignation.  The only events that occurred prior to Brandon's resignation were

Campanian's alleged derogatory comments, general threats, and her statement that

she planned to cut Brandon's pay in half.  Campanian's comments and threats

simply do not meet Brandon's burden.  Therefore, Brandon cannot establish that

she suffered an adverse employment action, and she fails to make out her prima

facie case of racial discrimination.

b. <u>Less Favorable Treatment</u>

Even if Brandon could show that she suffered an adverse employment

action, she is nevertheless unable to show that any treatment she experienced was

because of her race.  After a plaintiff shows that an adverse employment action has

occurred, "the 'ultimate question' in a Title VII disparate treatment claim remains

'whether a defendant took the adverse employment action against a plaintiff

<u>because of</u> her protected status.'"  <u>Raj v. La. State Univ.</u>, 714 F.3d 322, 331 (5th

Cir. 2013).  A plaintiff can make this showing either by proving that she was

replaced by someone outside of the protected class or that similarly situated

employees were treated more favorably.  <u>Nasti v. CIBA Specialty Chems. Corp.</u>,

492 F.3d 589, 593 (5th Cir. 2007).

18

Brandon cannot show that she was treated less favorably than other similarly situated employees because of her race.  She makes no evidentiary showing—nor even any allegation—that other similarly-situated non-Hispanic employees were free of pay cut threats after hiring transgender employees.  Accordingly, the Court finds that summary judgment on the retaliation claim is warranted and the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to the retaliation claim.

B.    <u>Hostile Work Environment</u>

With respect to Brandon's hostile work environment claim, Defendant contends that summary judgment is warranted because Brandon failed to present sufficient evidence on the third and fourth elements of her prima facie case.[4]  (Mot. at 9–10.)  Additionally, Defendant argues that even if Brandon can establish her prima facie case, her success is barred by the Defendant's <u>Faragher</u>/<u>Ellerth</u> affirmative defense.  (Mot. at 11–12.)

To demonstrate a prima facie case based on racial discrimination that creates a hostile work environment, a plaintiff has the burden to show that she "(1) belongs to a protected group; (2) was subjected to unwelcome harassment;

---

[4] The Court notes that, for the same reasons as set out above under the <u>CSC Logic</u> test, Campanian's alleged comments about Mexicans are not direct evidence of a hostile work environment.

19

(3) the harassment complained of was based on [race]; (4) the harassment complained of affected a term condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 401 (5th Cir. 2013) (citing Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012)). Since neither party contests that Brandon has met her burden on the first two elements, the Court addresses the remaining elements in turn.

   1. Based on Race

   Plaintiff does not specifically identify the harassment giving rise to her hostile work environment claim. As noted above, Brandon identifies three potential factual bases that could give rise to her claims: Campanian's derogatory comments about Mexicans, Campanian's threats against Brandon for hiring Eure, and Campanian's statement that she planned to cut Brandon's pay in half as punishment for hiring Eure. (Resp. at 1–2.) Brandon does not articulate any connection between her race and the alleged harassment that stemmed from her decision to hire Eure. Therefore, Campanian's alleged comments about Mexicans are the only facts that the Court can consider in support of a harassment claim based on race.

2.      Term, Condition, or Privilege of Employment

"Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Hernandez, 670 F.3d at 651 (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)).

"Conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 328 (5th Cir. 2004) (quoting Faragher, 524 U.S. at 788). However, "isolated incidents, if egregious, can alter the terms and conditions of employment." Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 435 (5th Cir. 2005) (quoting Faragher, 524 U.S. at 788). As the Supreme Court has made clear:

> These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.

Faragher, 524 U.S. at 788.

21

The environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." Aryain, 534 F.3d at 479.  In determining whether the working environment is sufficiently abusive or hostile, courts must look to the totality of the circumstances, including (1) the frequency of the conduct, (2) its severity, (3) "whether it is physically threatening or humiliating, or a mere offensive utterance", and (4) "whether it unreasonably interferes with an employee's work performance."  Royal, 736 F.3d at 401 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Although the alleged remarks by Campanian were clearly offensive, they were not severe or pervasive enough to affect the terms or conditions of Brandon's employment under the appropriate legal standard.  The comments occurred during a single, isolated conversation.  They were not physically threatening or humiliating, nor were they directed specifically at Brandon. Accordingly, they are insufficient to meet Brandon's burden on the fourth element of her prima facie case of hostile work environment.  Compare Hernandez, 670 F.3d at 652 (finding that the plaintiff's four encounters with racial slurs over more than a decade of employment was not enough to be severe or pervasive) with Walker v. Thompson, 214 F.3d 615, 626 (5th Cir. 2000) (finding a fact issue as to

22

whether the harassment was severe or pervasive when, over a period of three years, the plaintiffs were subject to "comparisons to slaves and monkeys, derisive remarks regarding their African heritage, patently offensive remarks regarding the hair of African-Americans, and conversations in which a co-worker and supervisor used the word nigger.").

Accordingly, the Court finds that summary judgment on the hostile work environment claim is warranted and the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to the hostile work environment claim.[5]

C.    Retaliation

Defendant also contends that summary judgment on Brandon's retaliation claim is warranted because Brandon failed to present sufficient evidence on any elements of her prima facie case.  (Mot. at 7–9.)  At the hearing, Plaintiff's counsel indicated that he believes that direct evidence supports the retaliation claim.

Like in discrimination claim, a plaintiff can prove retaliation either through direct or circumstantial evidence.  See Fierros v. Tex. Dep't of Health, 274

---

[5] Because Brandon fails to make out her prima facie case, the Court does not address the additional arguments advanced by the parties under the second and third prongs of the burden-shifting framework.

F.3d 187, 195 (5th Cir. 2001) (internal quotation marks and internal alteration

omitted), <u>overruled on other grounds by</u> <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90,

92 (2003).  To establish a prima facie case of retaliation under Title VII or § 1981,[6]

a plaintiff must show "(1) he engaged in an activity protected by Title VII; (2) he

was subjected to an adverse employment action; and (3) a causal link exists

between the protected activity and the adverse employment action."  <u>Willis v.</u>

<u>Cleco Corp.</u>, 749 F.3d 314, 317 (5th Cir. 2014).  In a direct evidence case, the

causal link will amount to evidence that, if believed, proves the fact of intentional

retaliation without inference or presumption.  <u>Fierros v. Tex. Dep't of Health</u>, 274

F.3d at 195.

       1.     <u>Protected Activity Under Title VII</u>

       An employee engages "in protected activity if she has 'opposed any

practice made an unlawful employment practice under [42 U.S.C. § 2000e–3(a)].'"

<u>Turner v. Baylor Richardson Med. Ctr.</u>, 476 F.3d 337, 348 (5th Cir. 2007) (quoting

---

[6] The Court notes that although both statutes are valid for claims based on race discrimination, sex discrimination is not cognizable under § 1981.  <u>See</u> <u>Davis v. Dall. Indep. Sch. Dist.</u>, 448 F. App'x 485, 490 n.4 (5th Cir. 2011) (citing <u>Daigle v. Gulf State Utils. Co., Local Union No. 2286</u>, 794 F.2d 974, 980 (5th Cir. 1986); <u>Bobo v. ITT, Cont'l Baking Co.</u>, 662 F.2d 340, 344–45 (5th Cir. 1981)).  Because Brandon relies on both race and sex as the basis for her retaliation claim, the Court only considers the § 1981 claims as applied to the allegations based on race. However, because the analysis under both statutes is identical, this observation does not substantively affect the Court's reasoning.

42 U.S.C. § 2000e–3(a)).  Unlike in the other Title VII contexts, the plaintiff does not need to be subject of the discrimination to set forth a retaliation claim; opposition to a discriminatory practice waged against a fellow employee can be the basis for a claim of retaliation.  Jones, 793 F.2d at 727.  To show that the activity was protected, the employee must have had "at least a reasonable belief that the practices she opposed were unlawful."  Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996) (internal quotation marks omitted).

Although Brandon does not specifically identify the factual basis of the protected activity in her complaint, she alleges that she responded to Campanian's comments, telling Campanian that San Antonio's population did not consist of migrant workers, that she hired Eure because Eure was qualified for the position, and that Campanian had failed to place Eure on the schedule.  (Brandon Decl. ¶¶ 3, 4.)  Because Brandon could not have reasonably believed that Campanian's statements about Mexican people and migrant workers constituted an unlawful employment practice in and of themselves, Brandon's response to Campanian cannot be a protected activity.  See Turner, 476 F.3d 337, 348–49 (5th Cir. 2007) (finding that plaintiff's request that her supervisor refrain from making remarks about "ghetto children" when referring to inner-city children was not a protected activity, even if those comments were "racially inappropriate").

25

However, Brandon could have reasonably believed that Campanian's alleged opposition to hiring transgendered persons and decision to remove Eure from the schedule was in violation of Title VII.[7]  Although neither the Supreme Court nor the Fifth Circuit[8] have ruled definitively as to whether informal complaints can constitute opposition, the majority of circuits find that informal complaints come within the opposition clause's requirements.  Hertz v. Luzenac Am., Inc., 370 F.3d 1014, 1015 (10th Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors); Shannon

---

[7] Although transgendered persons are not a per se protected class for Title VII purposes, transgendered persons can prevail on discrimination claims by showing that the discrimination occurred because of a failure to conform to gender stereotypes.  Compare E.E.O.C. v. Boh Bros. Constr. Co., L.L.C., 731 F.3d 444, 453–54 (5th Cir. 2013), with Etsitty v. Utah Transit Auth., 502 F.3d 1215, 1221–22 (10th Cir. 2007); Ulane v. E. Airlines, Inc., 742 F.2d 1081, 1084 (7th Cir. 1984); Sommers v. Budget Mktg., Inc., 667 F.2d 748, 750 (8th Cir. 1982).  While the contours of this doctrine are somewhat complex, the only issue here is whether Brandon could have reasonably believed that Campanian's actions violated Title VII.  Because there is a potential basis for recovery under Title VII through a gender stereotyping theory, her belief was reasonable.

[8] Although not binding on this Court, the Fifth Circuit has stated in an unpublished opinion that an employee need not submit a formal complaint or charge of discrimination to meet the opposition requirement and that an informal complaint to a supervisor is sufficient.  Tureaud v. Grambling State Univ., 294 F. App'x 909, 914–15 (5th Cir. 2008) (finding opposition when the plaintiff sought assistance from fellow employees in rallying support for a job applicant that the plaintiff believed was being discriminated against).

26

v. Bellsouth Telecommunications, Inc., 292 F.3d 712, 715 n.2 (11th Cir. 2002)

(noting that Title VII protects those "who informally voice complaints to their

superiors or who use their employers' internal grievance procedures"); Johnson v.

Univ. of Cincinnati, 215 F.3d 561, 580 (6th Cir. 2000) (listing various activities

that the EEOC identifies as opposing conduct); Sunner v. U.S. Postal Serv., 899

F.2d 203, 209 (2d Cir. 1990) (listing permissible forms of opposition as including

"making complaints to management"); Armstrong v. Index Journal Co., 647 F.2d

441, 448 (4th Cir. 1981) (considering informal complaints protected opposition);

Sias v. City Demonstration Agency, 588 F.2d 692, 694 (9th Cir. 1978) ("It should

not be necessary for an employee to resort immediately to the EEOC or similar

State agencies in order to bring complaints of discrimination to the attention of the

employer with some measure of protection.  The resolution of such charges

without government prodding should be encouraged.").

       The Court agrees with its sister courts that informal opposition to a

discriminatory practice can constitute protected activity.  Accordingly, there is a

fact question as to whether Brandon's comments in defense of Eure constituted a

protected activity.

       2.   Adverse Employment Action

       Unlike in the Title VII discrimination context, an adverse employment

action in the retaliation context is not limited to ultimate employment decisions, such as hiring, granting leave, discharge, promotion, and compensation.  McCoy v. City of Shreveport, 492 F.3d 551, 558 (5th Cir. 2007).  Rather, the action can be something that "a reasonable employee would have found . . . [to be] materially adverse" or, in other words, would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  Aryain, 534 F.3d at 484 (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68).

Again, while Plaintiff does not identify the specific basis for her adverse employment action allegation, she does allege that Campanian threatened to cut her pay in half as punishment for hiring and scheduling Eure.  Although the Fifth Circuit has not ruled on whether threatened pay cuts can amount to materially adverse action in the retaliation context, the few courts addressing threats of pay cuts under the materially adverse standard have found that they do not constitute materially adverse employment action.  Williams v. Lovchik, 830 F. Supp. 2d 604, 617 (S.D. Ind. 2011) ("[B]ecause the proposed salary decrease never came to fruition, it cannot constitute an adverse employment action"); Brock v. Positive Changes Hypnosis, LLC, 589 F. Supp. 2d 974, 983 (W.D. Tenn. 2008) (finding that threats to alter the terms of plaintiff's compensation were not materially adverse employment actions in the FLSA retaliation context because they were

28

never carried out); see also Mitchell v. Vanderbilt Univ., 389 F.3d 177, 182 (6th Cir. 2004) (finding that proposals to reduce pay were not materially adverse employment actions in the ADEA context because they were never implemented); Scott v. Metro. Health Corp., 234 F. App'x 341, 348 (6th Cir. 2007) (applying Mitchell in the false claims retaliation context).

The Court agrees that mere threats of pay reduction that never come to fruition would not dissuade a reasonable worker from making or supporting a charge of discrimination and that, therefore, they cannot constitute a materially adverse employment action.  Since Brandon's claims do not amount to constructive discharge, there is no adverse employment action upon which she can rely.  Brandon thus fails to establish the second element of her prima facie case of retaliation.[9]  Accordingly, the Court finds that summary judgment on the retaliation claim is warranted and the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to the retaliation claim.

     D.    Negligent Hiring, Supervision, Training, and Retention Claims

Finally, Defendant contends that summary judgment on Brandon's negligent hiring supervision, training, and retention claims is proper because

---

[9] Because Brandon cannot establish that an adverse employment action occurred, the question of whether there is direct evidence to support her claim is irrelevant.

(1) negligence claims based on acts of discrimination or harassment are preempted by the Texas Commission on Human Rights Act ("TCHRA"); (2) negligence claims against an employer are preempted by the worker's compensation remedy; (3) there is no evidence that a Sage employee committed a tort against Brandon; and (4) Brandon has failed to show any negligence on the part of Defendant. (Mot. at 17–19.)

        1.   <u>Preemption</u>

The TCHRA is a Texas statute prohibiting discrimination and retaliation against employees on the basis of race, sex, and other protected characteristics. Tex. Labor Code § 21.051. When the facts underlying a plaintiff's negligence claims are entwined with facts that would give rise to a harassment claim under the TCHRA, the TCHRA is the exclusive state-law remedy for the harassment. <u>Waffle House, Inc. v. Williams</u>, 313 S.W.3d 796, 799 (Tex. 2010).

Although Brandon does not identify the specific facts giving rise to her claim based in negligence, the only possible basis for her claims is the same set of facts that form the basis of her discrimination, harassment, and retaliation claims. Because the TCHRA is the exclusive state-law remedy for those claims, Brandon's negligence claims fail as a matter of law.

2.    <u>The Merits</u>

Even if Brandon's negligence claims were not preempted by the TCHRA, her claims would nevertheless fail.  Although the Texas Supreme Court has "not ruled definitively on the existence, elements, and scope" of negligent hiring claims, a few broad principles are clear.  First, like a general negligence action, a negligent hiring action requires a showing of duty, a breach of that duty, and damages proximately caused by the breach.  <u>Castillo v. Gulf Coast Livestock Mkt., L.L.C.</u>, 392 S.W.3d 299, 306 (Tex. 2012); <u>see also</u> <u>Wansey v. Hole</u>, 379 S.W.3d 246, 248 (Tex. 2012); <u>Kroger Co. v. Elwood</u>, 197 S.W.3d 793, 794 (Tex. 2006).  Second, the plaintiff must show that she "suffer[ed] some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices," which amount to an independently actionable tort.  <u>Wansey</u>, 379 S.W.3d at 247–248.  Third, when the claim is based on failure to screen, as it is in the instant case, the plaintiff must show that the "employer's failure to investigate, screen, or supervise its [hires] proximately caused the injuries the plaintiffs allege."  <u>Fifth Club, Inc. v. Ramirez</u>, 196 S.W.3d 788, 796 (Tex. 2006) (internal quotation marks omitted) (quoting <u>Doe v. Boys Clubs of Greater Dall., Inc.</u>, 907 S.W.2d 472, 477 (Tex. 1995)).  Accordingly, this Court has previously concluded that:

> [A] negligent hiring and management claim in Texas requires a
> plaintiff to establish that: (1) an employee of the defendant committed
> an actionable tort against the plaintiff, (2) the plaintiff suffered
> damages as a result of the employee's foreseeable misconduct, (3) the
> employer was negligent in hiring or supervising the employee, and
> (4) the employee's misconduct would not have occurred but for the
> employer's negligence.

Ayres v. Parker, No. 5:12-CV-621-XR, 2013 WL 4048328, at *18 (W.D. Tex. July

29, 2013).

　　　　　Although Brandon names negligent hiring, supervision, training, and

retention as the basis of her claim, she does not identify any actionable tort

committed by Campanian (or any other Sage employee).  Having failed to identify

any particular tort, she has not met her burden under Wansey.

　　　　　Even if Brandon had identified a particular tort committed by

Campanian, the Court cannot find any support in the record showing that

Campanian's alleged harassment was foreseeable. Plaintiff presents no evidence

that Campanian had received discipline or been subject to termination for

race-based harassment at Sage or any other prior employer.  See Ogunbanjo v. Don

McGill of W. Houston, Ltd., No. 1-13-406-CV, 2014 WL 298037, at *3 (Tex.

App.—Houston [1st Dist.] Jan. 28, 2014) (finding that a previous termination,

without an evidentiary showing of the basis for that termination, was insufficient to

raise a fact issue regarding foreseeability of sexual harassment).  The only

evidence in the record addressing Campanian's disciplinary record is her own attestation that she has never had a complaint of harassment or discrimination made against her during her thirty years working in driving schools.  (Mot., Ex. 3 ¶ 5.)  Accordingly, Brandon has failed to show that any alleged harassment by Campanian was foreseeable to Defendant.

Therefore, Defendant's Motion for Summary Judgment on the negligence claims is **GRANTED.**

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. # 21).  Accordingly, all claims made against Defendant are **DISMISSED.**  In accordance with this holding, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Strike (Dkt. # 27).

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, November 19, 2014.

_____
David Alan Ezra
Senior United States Distict Judge

33